**CARLTON FIELDS, P.A.**
Michael D. Margulies
Julia E. Duffy
180 Park Avenue, Suite 106
Florham Park, New Jersey 07932
Tel.: (973) 828-2600
mmargulies@carltonfields.com
jduffy@carltonfields.com
*Attorneys for TelTech Systems, Inc.*
*and Epic Applications, LLC, i/p/a Epic Enterprises, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, and WILLIAM SULLIVAN,<br><br>    Plaintiffs,<br><br>    -against-<br><br>TELTECH SYSTEMS, INC., EPIC ENTERPRISES, LLC, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>    Defendants. | Civil Action No. _____<br><br>**NOTICE OF REMOVAL** |

**TO THE CLERK OF COURT**:

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendants TelTech Systems, Inc.

("TelTech") and Epic Applications, LLC[1] ("Epic," together with TelTech, "Defendants"), by and

---

[1] Defendant Epic Applications, LLC was incorrectly identified in the Complaint as Epic Enterprises, LLC.  Epic Enterprises, LLC was converted to a Delaware LLC on November 4, 2022, at the same time that its name was amended to Epic Applications, LLC.

through their undersigned counsel, hereby remove the case styled as *Atlas Data Privacy Corporation, as assignee of individuals who are Covered Persons, Jane Doe-1, a law enforcement officer, Jane Doe-2, a law enforcement officer, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, and William Sullivan v. Teltech Systems, Inc., Epic Enterprises, LCC, Richard Roes 1-10, fictitious names of unknown individuals and ABC Companies 1-10, fictitious names of unknown entities*, Docket No. MID-L-859-24 (the "State Court Action"), from the Superior Court of New Jersey, Middlesex County, where it is now pending, to the United States District Court for the District of New Jersey.  Removal is proper because there is diversity jurisdiction under Section 1332 and, alternatively, there is federal jurisdiction under the Class Action Fairness Act ("CAFA") as this action is a class action or a mass action.  The grounds for removal are as follows.

### D.N.J. LOCAL RULE 10.1 STATEMENT

1.      The plaintiffs in this action are Atlas Data Privacy Corporation, Jane Doe-1, Jane Doe-2, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, and William Sullivan.  The address for Atlas Data Privacy Corporation listed in the operative complaint is 201 Montgomery Street, Suite 263, Jersey City, New Jersey 07302.  The remaining addresses of the plaintiffs are unknown to Defendants.  Defendants cannot locate the identities of Jane Doe-1 and Jane Doe-2 as the actual identities are not known.  The addresses of the remaining plaintiffs cannot be determined currently by Defendants.  Plaintiffs are represented by Rajiv D. Parikh and Kathleen Barnett Einhorn, of PEM Law LLC, 1 Boland Dr., Suite 101, West Orange, New Jersey 07052.  The plaintiffs are also represented by John A. Yanchunis of Morgan & Morgan, located at 201 N. Franklin Street, 7th Floor, Tampa, FL 33602.

2.      The defendants in this action are Teltech Systems, Inc., a Delaware corporation, whose principal place of business is located at 555 West 18th Street, New York, New York 10011, and Epic Applications, LLC, a limited liability company organized under the laws of Delaware with a principal place of business located at 555 West 18th Street, New York, New York, 10011.  Defendants are represented by Michael D. Margulies and Julia E. Duffy of Carlton Fields, P.A., located at 180 Park Avenue, Suite 106, Florham Park, N.J. 07932.

## NOTICE OF REMOVAL

3.      On or about February 8, 2024, Plaintiffs Atlas Data Privacy Corporation ("Atlas"), as assignee of individuals who are Covered Persons, Jane Doe-1, a law enforcement officer, Jane Doe-2, a law enforcement officer, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, and William Sullivan (collectively, "Plaintiffs") initiated the State Court Action by filing a Summons and Complaint in the Superior Court of New Jersey, Middlesex County, against Defendants.  In accordance with 28 U.S.C. § 1446(a), a true and correct copy of Plaintiffs' Summons and Complaint is attached hereto as **Exhibit A**.

4.      On February 26, 2024, Plaintiffs served the Summons and Complaint upon TelTech and Epic.  As such, this Notice of Removal is being timely filed pursuant to 28 U.S.C. § 1446(b)(1) because it is filed within 30 days of service.

5.      Plaintiffs allege in the Complaint that Defendants violated N.J.S.A. § 47:1A-1, et seq., and N.J.S.A. § 56:8-166.1 ("Daniel's Law") because 18,564 assignors (the "Assignors"), and Plaintiffs Doe-1, Doe-2, Maldonado, the Maloneys, Colligan, and Sullivan allegedly requested that Defendants "cease disclosing or re-disclosing on the Internet or otherwise making available their protected information on one or more of Defendants' websites or through other methods of disclosure."  Compl., ¶¶ 25-27.  Plaintiffs further allege that Defendants did not

"cease the disclosure or re-disclosure on the Internet or otherwise making available of information as required under Daniel's Law," within 10 days of Plaintiffs' alleged requests. *Id.*, ¶¶ 59-61.

## I.    FEDERAL DIVERSITY JURISDICTION EXISTS

### A.    Complete Diversity

6.    Under 28 U.S.C. § 1332, diversity jurisdiction requires "complete" diversity, such that all plaintiffs are of different citizenship than all defendants. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015). Complete diversity exists here.

7.    Defendant TelTech is a Delaware corporation, with its principal place of business in the State of New York.

8.    Defendant Epic is organized under the laws of Delaware, and its principal place of business is in the State of New York. Epic is wholly owned by TelTech.

9.    Plaintiffs Jane Doe 2, Scott Maloney, and Justyna Maloney are citizens of the State of New Jersey. Compl., ¶¶ 16, 18. Upon information and belief, Plaintiffs Jane Doe 1, Edwin Maldonado, Patrick Colligan, and William Sullivan are citizens of the State of New Jersey. *Id.*, ¶¶ 15, 17, 22, 23.

10.    Plaintiff Atlas is a Delaware corporation, with its principal place of business in the State of New Jersey. *Id.*, ¶ 24.

11.    While Plaintiff Atlas and Defendants TelTech and Epic are incorporated or organized in Delaware, Atlas's citizenship is immaterial and should be disregarded in assessing diversity because Atlas is merely a purported assignee of claims by and belonging to New Jersey citizens. *See* Compl., ¶ 25; 13F Fed. Prac. & Proc. Juris. § 3641, 3 (3d ed.) ("Wright & Miller") ("[A] number of federal courts have refused to ignore the possibility that a plaintiff may have

engaged in a collusive attempt to manipulate the forum for a particular lawsuit and have retained removed cases on the basis of diversity jurisdiction after they have inquired into the validity of a state law transaction.").

12.     Atlas may well be only a partial assignee, meaning that the Assignors have retained some financial, injunctive, or other rights in their claims under Daniel's Law.  In that case, Atlas' citizenship should be disregarded in assessing diversity.  *See, e.g., Attorneys Trust v. Videotape Computer Products, Inc.*, 93 F.3d 593, 597 (9th Cir. 1996) (noting that courts are "sensitive to and concerned by manipulations of their jurisdiction with partial assignments which lack reality and amount to no change in the identity of the party with the real interest in the outcome of the case"); *see also Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 185 (5th Cir. 1990).

13.     Even if Atlas were a complete assignee, which seems highly unlikely under the circumstances, courts still look at and behind the pleadings to determine whether an assignee's citizenship should be deemed collusive and disregarded as inconsequential to the diversity analysis. *See Attorneys Trust*, 93 F.3d at 600 (holding that courts "may look to all of the facts and circumstances and ask whether the assignment did destroy diversity jurisdiction"); Wright & Miller at 2 (stating the courts should "exercise vigilance in protecting the rights of litigants to invoke federal jurisdiction by exercising their authority to examine the underlying nature of transactions that have the effect of destroying diversity jurisdiction").

14.     Here, Atlas is a *de facto* contingent fee/litigation finance vehicle formed solely to serve as a litigation tool for law firms seeking to represent Daniel's Law claimants.  Atlas, which did not exist when Daniel's Law was enacted in November 2020, incorporated in Delaware just five months later.  A true and accurate copy of Atlas's corporate registration is attached hereto as **Exhibit B**.  In 2023, the law firm of Genova Burns, LLC registered as a lobbyist for Atlas in

New Jersey, pushing for amendments to Daniel's Law to specifically address assignment. A true and accurate copy of Genova Burns, LLC's lobbyist registration is attached hereto as **Exhibit C**. *See* Exhibit C, at p.5. Daniel's Law was later amended on July 20, 2023, to allow claim assignments. *See* N.J.S.A. 56:8-166.1b, d. The Assignors' purported assignments to Atlas presumably occurred thereafter. *See* Compl., ¶ 25.

15. On or about December 21, 2023 (or earlier), Atlas began sending at least 18,564 Daniel's Law "written nondisclosure requests (via email)," as part of a campaign to send many thousands of such requests to at least 130 separate companies. *See* Compl., ¶ 51. Atlas, however, did not even register to do business in New Jersey until January 12, 2024. *See* **Exhibit B**.

16. Less than a month after registering to do business in New Jersey, Atlas filed this lawsuit, as part of a series in rapid succession of more than 140 others, with its lobbying firm acting as Plaintiffs' counsel, together with Morgan & Morgan, an Orlando, Florida-based personal injury law firm whose contingency-fee business model is reflected in its tag line, "The Fee Is Free Unless You Win." *See generally* Compl. It is apparent that Atlas sprang into being and exists solely to serve as an aggregator of claims obtained through collusive assignments—a cog in a litigation mill built to cash in on Daniel's Law and its statutory damages provision. Courts in such situations do not hesitate to disregard an entity like Atlas's citizenship in assessing diversity jurisdiction. *See, e.g., Attorneys Trust*, 93 F.3d at 595 (disregarding assignee entity's citizenship when there was "an assignment in name only" that "tampers with the jurisdiction of the court by artificially affecting it"); *Grassi*, 894 F.2d at 182, 186 (disregarding entity's citizenship when it had "no legitimate and independent interest in the litigation, but was

simply providing litigation support services on a contingent fee arrangement at the behest of [plaintiffs'] attorney").

17.     This Court likewise should disregard Atlas's Delaware incorporation here in assessing diversity jurisdiction.  *Grassi* is instructive.  There, the plaintiffs filed an action in state court, the defendant removed it to federal court, and the plaintiffs sought remand back to state court, arguing that a partial assignment of the plaintiffs' claims to a non-diverse party destroyed diversity.  894 F.2d at 185.  The Fifth Circuit affirmed denial of remand, holding that district courts have "both the authority and responsibility . . . to examine the motives underlying a partial assignment which destroys diversity and to disregard the assignment in determining jurisdiction if it be found to have been made principally to defeat removal."  *Ibid*.  This approach is consistent with the Supreme Court's scrutiny of assignments that were designed to *create* federal jurisdiction; just as assignments must be scrutinized so that a "vast quantity of ordinary contract and tort litigation [is not] channeled into the federal courts at the will of one of the parties," *Kramer v. Caribbean Mills, Inc*., 394 U.S. 823, 828-29 (1969), so too must the Court scrutinize collusive assignments designed to *defeat* federal jurisdiction.  *Grassi*, 894 F.2d at 183.  Engaging in this searching analysis falls squarely within the Court's "inherent authority to look beyond the pleadings in order to protect a litigant's right to diversity jurisdiction."  *Id.*  Relatedly, the effectiveness *vel non* of the purported assignment should "be judged in accordance with federal, not state, standards."  Wright & Miller at 4.

18.     Similarly, *Attorneys Trust* involved a scenario where a collusive assignment was designed to destroy jurisdiction.  93 F.3d at 599-600.  The court noted that in such situations, the assignee is nothing more than a "strawman," and "there is no more reason for federal courts to countenance destruction of jurisdiction by the use of straw parties than there is for them to

countenance the creation of jurisdiction in that manner."  *Id*. at 598; *see also NPD Management & Building Services, Inc. v. Geismar North America, Inc*., C.A. No. 20-2739, 2021 WL 5231870, *3 (E.D. La. Nov. 10, 2021) (citing *Grassi*, 894 F.2d at 184-86) ("[A] plaintiff may not make a 'collusive' partial assignment of its interests in the subject matter of litigation to destroy valid diversity jurisdiction and to prevent the removal of an action to federal court."); *Cambridge Place Inv. Mgmt., Inc. v. Morgan Stanley & Co*., 813 F. Supp. 2d 242, 244 (D. Mass. 2011) (quoting *JMTR Enters., LLC v. Duchin*, 42 F. Supp. 2d 87, 92 (D.Mass. 1999)) ("The Court must examine and disregard an assignment 'if it be found to have been made principally to defeat removal.'"); *JMTR Enters.*, 42 F. Supp. 2d at 93 (quotations omitted) ("Under these circumstances, the assignment of this fractional interest should not have the effect of depriving . . . the noncitizen, of the federal forum which Congress has provided."); *Gentle v. Lamb-Weston, Inc.*, 302 F. Supp. 161, 166 (D. Me. 1969) (finding that diversity was not defeated where assignment was made to defeat anticipated removal).

19.    From the face of the pleadings and under the applicable legal standard, it is evident that Atlas's citizenship should be disregarded and that diversity of citizenship exists, such that removal is proper.  To the extent the Court concludes that the citizenship of the 18,564 Assignors is relevant to the diversity analysis, it should be noted that all of the Assignors are alleged to be "covered persons" under Daniel's Law and therefore should, pursuant to statute, be citizens of New Jersey.  *See* N.J.S.A. 40A:14-122.8; N.J.S.A. 52:14-7a; *see also* Compl, ¶ 25.

20.    Should the Court conclude that questions about diversity of citizenship remain, the Court should, ***before*** ruling on any motion to remand, order discovery of Atlas on the issues relevant to the diversity analysis under *Grassi* and its progeny.  Such issues would include, without limitation: (i) what exactly the Assignors assigned to Atlas; (ii) what if any consideration

the Assignors received from Atlas and/or any third party in exchange for the assignments (e.g., the right to receive X% of any recovery obtained on the assigned claim); (iii) whether the Assignors and Atlas were represented by separate, or any, counsel in connection with the assignments; (iv) what arrangements or relationships, financial or otherwise, exist between Atlas and its law firms in these matters; and (v) who, as between Atlas and its counsel, has actual and practical control over the litigation, including its potential resolution by settlement. *See Grassi*, 894 F.2d at 186; *NPD Management*, 2021 WL 5231870 at *4 ("It is the reality of an assignment, not the term used to describe it, that courts should look to determine whether it was collusive."). Courts routinely permit jurisdictional discovery to determine whether assignments were made for the purpose of defeating federal jurisdiction. *See, e.g., Lincoln Ben. Life Co*., 800 F.3d at 108 (district courts can order jurisdictional discovery); *Hagenbaugh v. Nissan N.A*., C.A. No. 3:20-1838, 2022 WL 676277, at *4 (M.D. Pa. Mar. 7, 2022) (allowing removing defendant to take jurisdictional discovery because plaintiff challenged allegations in notice of removal); *Mithril GP Emp. Feeder LLC v. McKellar*, C.A. No. 19-cv-2144-RGA, 2020 WL 3206555, at *1 (D. Del. June 15, 2020) (same).

21.     Complete diversity of citizenship here supports removal jurisdiction.

**B.     Amount in Controversy**

22.     Traditional diversity of citizenship jurisdiction also requires that the amount in controversy exceed $75,000. *See* 28 U.S.C. § 1332(a).

23.     When "the plaintiff's complaint does not include a specific monetary demand, the removing defendant need only 'plausibl[y] alleg[e]' the amount in controversy." *Yucis v. Sears Outlet Stores, LLC*, 813 Fed. App'x 780, 782 n.2 (3d Cir. 2020) (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014)). Only a single plaintiff need satisfy the

requirement; the Court can then exercise supplemental jurisdiction over any other plaintiffs, regardless of the value of their claims. "[W]here the other elements of [diversity] jurisdiction are present and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, § 1367 does authorize supplemental jurisdiction over the claims of other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction." *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 549 (2005) (emphasis added); *see also Burgess v. Bennet*, C.A. No. 20-7103 (FLW), 2021 WL 1050313, at *5 n. 9 (D.N.J. Mar. 19, 2021) ("[A]though these particular plaintiffs' claims may not reach the amount in controversy, so long as one plaintiff in this case satisfies the jurisdictional amount, this Court may exercise supplemental jurisdiction over the remaining plaintiffs' claims.")

24.    Atlas, standing alone, satisfies the required amount in controversy. Atlas purports to bring claims on behalf of 18,564 Assignors. Compl., ¶ 25. Daniel's Law provides for damages of at least $1,000 for each violation of the statute. *See* N.J.S.A. 56:8-166.1c(1). Atlas therefore claims statutory damages that potentially amount to more than $18,564,000, far in excess of the $75,000 threshold. Moreover, courts have held that an assignee's claims may be aggregated to satisfy the jurisdictional amount-in-controversy requirement. *Deajess Medical Imaging, P.C. v. Allstate Ins. Co.*, 344 F.Supp.2d 907, 909-10 (S.D.N.Y. 2004).

25.    Beyond Atlas, the seven other named individual plaintiffs each satisfy the amount-in-controversy requirement. Each such plaintiff seeks (1) "actual damages, not less than liquidated damages under Daniel's Law, at '$1,000 for each violation,'" (2) "an additional amount in punitive damages, to be determined by the Court, for 'willful noncompliance' as allowed under Daniel's Law," (3) "reasonable attorneys' fees," and (4) "injunctive relief."

Compl. at 24.  Adding together potential statutory, actual, and punitive damages, as well as the value of injunctive relief and attorneys' fees, each Plaintiff has put far more than $75,000 in controversy.

### i. Actual and Statutory Damages

26.     Here, Plaintiffs seek to recover, among other things, "actual damages, not less than liquidated damages under Daniel's Law, at '$1,000 for each violation[.]'"  Compl. at 24, ¶ B.  Each plaintiff alleges a statutory violation against both TelTech and Epic.

27.     In addition to Defendants TelTech and Epic, Plaintiffs brought this suit against "Richard Roes 1-10 and ABC Companies 1-10," which allegedly "were also involved" in the alleged violations of Daniel's Law, *see* Compl., ¶ 38—for a total of 22 Defendants, including TelTech and Epic.  Thus, each of the seven other named Plaintiffs is alleging a minimum of $22,000 in actual damages alone.

### ii. Punitive Damages

28.     The Complaint also seeks punitive damages, the availability of which contributes to the aggregate amount-in-controversy.  Compl., at 24, ¶ C.

29.     "When determining the amount in controversy, punitive damages . . . are part of the amount in controversy calculation."  *Atl. Util. Trailer Sales Inc. v. Harco Nat'l Ins. Co.*, No. CV 20-02349, 2020 WL 3287129, at *2 (D.N.J. June 18, 2020) (citing *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007)) ("[Plaintiff] is seeking punitive damages, which we must consider when calculating the amount in controversy.")).

30.     "Under New Jersey law, punitive damages are capped at 'five times the liability of that defendant for compensatory damages or $350,000, whichever is greater.'"  *Harco*, 2020

WL 3287129, at *2 (quoting N.J. Stat. Ann. § 2A:15–5.14 (2014)). "For purposes of the amount in controversy calculation, courts assume this maximum 'five times' multiplier." *Ibid.*

31.     As explained above, as alleged in the Complaint, each of the individual claims encompassed by the Complaint could result in an award of "actual damages, [] not less than liquidated damages computed at the rate of $1,000 for each violation of" Daniel's Law. Compl., ¶ 50 (quoting N.J.S.A 56:8-166.1(c)(1)).

32.     As further alleged in the Complaint, Daniel's Law authorizes punitive damages in certain circumstances. Compl., ¶ 50 (quoting N.J.S.A 56:8-166.1(c)(2)). For amount-in-controversy purposes, the "maximum 'five times' multiplier" reflects the possibility of punitive damages in the amount of five times the amount of actual damages, or an additional $5,000 per claim.

33.     Thus, the potentially available actual damages ($1,000) and corresponding punitive damages ($5,000) could total $6,000 for each claim, according to the allegations in the Complaint. Each claim was brought against each Defendant, resulting in potential actual and punitive damages totaling $132,000 for each individual claims against the 22 total defendants. The potential total of actual and punitive damages for each individual plaintiff's claim clearly exceeds the $75,000 threshold.

### iii. Attorneys' Fees

34.     The Complaint also seeks attorneys' fees, which further contribute to the aggregate amount-in-controversy. Compl. at 24, ¶ D.

35.     "When determining the amount in controversy, . . . attorney's fees are part of the amount in controversy calculation." *Harco*, No. CV 20-02349, 2020 WL 3287129, at *2 (citing *Frederico*, 507 F.3d at 199). The Third Circuit has awarded attorneys' fees of 30% of a class

judgment.  *See Frederico*, 507 F.3d at 199 (noting that, in determining whether the monetary threshold under the Class Action Fairness Act has been met, "[f]ees could be as much as thirty percent of the judgment").  Thus, the inclusion of attorneys' fees in the amount-in-controversy total increases that total by another 30%.

### iv. Injunctive and Equitable Relief

36.    Plaintiffs also seek equitable relief in the Complaint, including a permanent injunction compelling compliance with Daniel's Law and "the appointment of a qualified independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law."  Compl. at 24, ¶¶ E-F.  These additional costs would further increase the amount-in-controversy total above the $75,000 threshold.

37.    For all the foregoing reasons, the Complaint's allegations, and reasonable inferences and conclusions drawn therefrom, satisfy the $75,000 amount-in-controversy requirement for each individual plaintiff.

## II.    FEDERAL JURISDICTION ALSO EXISTS UNDER THE CLASS ACTION FAIRNESS ACT

38.    Even if the Court were to find that traditional diversity jurisdiction is lacking, the Court would still have subject matter jurisdiction because this matter is either a "class action" or a "mass action" under the federal Class Action Fairness Act ("CAFA").

39.    "Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court."  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (citing *Standard Fire Ins. Co. v. Knowles,* 568 U.S. 588, 592 (2013)).  Accordingly, "CAFA's 'provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.'"  *Dart*, 574 U.S. at 89 (quoting S. Rep. No. 109–14, p. 43 (2005)).

40.     "CAFA dramatically expanded the role of the federal judiciary in class action litigation, and expressed a clear preference for qualifying class actions to be entertained in federal forums."  *Portillo v. Nat'l Freight, Inc.*, 169 F. Supp. 3d 585, 589 (D.N.J. 2016). Because "the language of CAFA favors federal jurisdiction over class actions," "'no antiremoval presumption attends cases invoking CAFA.'"  *Portillo*, 169 F. Supp. 3d at 592 n.9 (quoting *Dart*, 574 U.S. at 89).

A.      **CAFA Class Action Requirements**

41.     "CAFA confers on district courts 'original jurisdiction of any civil action' in which three requirements are met: (1) an amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) that the class consist of at least 100 or more members ('numerosity requirement')."  *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (quoting 28 U.S.C. § 1332(d)(2), (5)(B), (6)). In addition, to be considered a "class action" under CAFA, the suit must be "filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).

42.     CAFA's requirements for federal jurisdiction over a class action are satisfied here because (1) there is minimal diversity between the parties; (2) the aggregate amount-in-controversy exceeds $5,000,000; (3) the putative class exceeds 100 members; and (4) the suit was filed under a state-law analogue to Rule 23.

### i. Minimal Diversity

43.    CAFA requires minimal diversity among the parties, meaning, as applicable here, that at least one class member and at least one defendant must be citizens of different states.  28 U.S.C. § 1332(d)(2)(A).

44.    For purposes of CAFA, a corporation is a citizen of the state "by which it has been incorporated" and of the state "where it has its principal place of business." 28 U.S.C. § 1332(c)(1).  Similarly, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10).

45.    In the Complaint, Plaintiffs allege, at a minimum, that Plaintiffs Doe 2 and the Maloneys are citizens of the State of New Jersey.  Compl., ¶¶ 16, 18.  Further, the Complaint alleges that the Assignors "include individuals who reside, work or had previously resided or worked in New Jersey."  Compl., ¶ 26.

46.    Defendants TelTech and Epic are each organized under the laws of Delaware and their principal places of business are in New York.

47.    Because TelTech and Epic's citizenship (Delaware and New York) is different from the citizenship (New Jersey) of at least four Plaintiffs, CAFA's minimal diversity requirement is satisfied.

### ii. Aggregate Amount-in-Controversy

48.    CAFA requires that the aggregate amount in controversy in the action exceed $5,000,000, exclusive of interest and costs.  *See* 28 U.S.C. § 1332(d)(2).

49.    "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart*, 574 U.S. at 89; *see also*

*Vaccaro v. Amazon.com.dedc, LLC*, No. CV 18-11852, 2019 WL 1149783, at *3 (D.N.J. Mar. 13, 2019) (same).

50.     In the Third Circuit, the amount-in-controversy requirement is deemed satisfied "where the plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum," unless "it appears to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount." *Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007) (emphasis in original).

### a.    Actual Damages

51.     Here, Plaintiffs seek to recover, among other things, "actual damages, not less than liquidated damages under Daniel's Law, at '$1,000 for each violation.'" Compl. at 24, ¶ B.

52.     The Complaint alleges that Defendants did not comply with Daniel's Law with respect to the rights of each of the 18,564 individual Assignors who each have allegedly assigned their claims under the statute to Plaintiff Atlas. Compl., ¶¶ 25, 28, 53-54. An assignee's claims may be aggregated to satisfy the jurisdictional amount-in-controversy requirement. *E.g.*, *Deajess Medical Imaging, P.C. v. Allstate Ins. Co.*, 344 F.Supp.2d 907, 909-10 (S.D.N.Y. 2004). Moreover, the same violations of Daniel's Law are alleged by named Plaintiffs Doe 1, Doe 2, Maldonado, the Maloneys, Colligan, and Sullivan. *See, e.g.,* Compl., ¶¶ 28, 53-54. Thus, as against each of the Defendants, the Complaint seeks to recover for 18,571 alleged statutory violations valued at $1,000 each, for a total of $18,571,000 in "actual" damages, clearly exceeding the $5,000,000 aggregate amount-in-controversy threshold.

53.     Further, in addition to Defendants TelTech and Epic, Plaintiffs brought this suit against "Richard Roes 1-10 and ABC Companies 1-10," which allegedly "were also involved" in the alleged violations of Daniel's Law, *see* Compl., ¶ 38—for a total of 22 Defendants, including

TelTech and Epic.  Thus, according to the Complaint, each of 18,571 individual claimants seeks to recover "not less than" $1,000 in damages from each of the 22 Defendants.  Accordingly, the Complaint itself has put in issue a total "actual" damages amount that (at $408,560,000) dwarfs the $5,000,000 threshold for the aggregate amount in controversy.

### b.    Punitive Damages

54.    The Complaint also seeks punitive damages, which contribute to the aggregate amount in controversy.  Compl., at 24, ¶ C.

55.    "When determining the amount in controversy, punitive damages . . . are part of the amount in controversy calculation."  *Atl. Util. Trailer Sales Inc. v. Harco Nat'l Ins. Co.*, No. CV 20-02349, 2020 WL 3287129, at *2 (D.N.J. June 18, 2020) (citing *Frederico v. Home Depot*, 507 F.3d 188, 199 (3d Cir. 2007) ("[Plaintiff] is seeking punitive damages, which we must consider when calculating the amount in controversy.")).

56.    "Under New Jersey law, punitive damages are capped at 'five times the liability of that defendant for compensatory damages or $350,000, whichever is greater.'"  *Harco*, No. CV 20-02349, 2020 WL 3287129, at *2 (quoting N.J. Stat. Ann. § 2A:15–5.14 (2014)).  "For purposes of the amount in controversy calculation, courts assume this maximum 'five times' multiplier."  *Id.* (citing *Frederico*, 507 F.3d at 199).

57.    As explained above, as alleged in the Complaint, each of the 18,571 claims it encompasses could result in an award of "actual damages, [] not less than liquidated damages computed at the rate of $1,000 for each violation of" Daniel's Law.  Compl., ¶ 50 (quoting N.J.S.A 56:8-166.1(c)(1)).

58.    As further alleged in the Complaint, Daniel's Law authorizes punitive damages in certain circumstances.  Compl., ¶ 50 (quoting N.J.S.A 56:8-166.1(c)(2)).  For amount-in-

controversy purposes, the "maximum 'five times' multiplier" reflects the possibility of punitive damages in the amount of five times the amount of actual damages, or an additional $5,000 per claim.

59.     Thus, the potentially available actual damages ($1,000) and corresponding punitive damages ($5,000) could total $6,000 for each claim, according to the allegations in the Complaint.  Each claim was brought against both TelTech and Epic, resulting in potential actual and punitive damages of $12,000 on each of the 18,564 Assignor claims.

60.     In sum, the Complaint alleges that it involves the claims of 18,571 individuals. Multiplied by $12,000 per claim, the aggregate actual and punitive damages alleged in the Complaint far exceed $5,000,000 (without even considering the claims against the 20 additional unnamed defendants identified in the Complaint).

### c.    Attorneys' Fees

61.     The Complaint also seeks attorneys' fees, which further contribute to the aggregate amount in controversy.  Compl. at 24, ¶ D.

62.     "When determining the amount in controversy, . . . attorney's fees are part of the amount in controversy calculation."  *Harco*, No. CV 20-02349, 2020 WL 3287129, at *2 (citing *Frederico*, 507 F.3d at 199).  The Third Circuit has awarded attorneys' fees of 30% of a class judgment.  *See Frederico*, 507 F.3d at 199 (noting that, in determining whether the CAFA threshold has been met, "[f]ees could be as much as thirty percent of the judgment").  Thus, the inclusion of attorneys' fees in the amount-in-controversy total increases the total by 30%.

### d.    Injunctive and Equitable Relief

63.     Plaintiffs also seek equitable relief in the Complaint, including a permanent injunction compelling compliance with Daniel's Law and "the appointment of a qualified

independent expert to ensure that Defendants prospectively maintain compliance with Daniel's Law." Compl. at 24, ¶¶ E-F. These additional costs would further increase the amount-in-controversy total above the $5,000,000 threshold.

64. For all the foregoing reasons, the Complaint's allegations, and reasonable inferences and conclusions drawn therefrom, satisfy CAFA's $5,000,000 aggregate amount-in-controversy requirement.

### iii. Numerosity

65. CAFA requires that "the number of members of all proposed plaintiff classes in the aggregate" must be at least 100. 28 U.S.C. § 1332(d)(5). In counting such members, "the term 'class members' means the persons (named or unnamed) who fall within the definition of the proposed or certified class in a class action." 28 U.S.C. § 1332(d)(1)(D). The numerosity requirement, for jurisdictional purposes, is satisfied here.

66. "[T]he Third Circuit found that partial assignees can be counted as class members when evaluating whether a class meets Rule 23's numerosity requirement." *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, C.A. No. 06-0620, 2020 WL 5211035, at *10 (E.D. Pa. Sept. 1, 2020) (citing *In re Modafinil Antitrust Litigation*, 837 F.3d 238, 251-52 (3d Cir. 2016)).

67. Here, the proposed class consists of 18,571 members—the 18,564 Assignors for whom Atlas sues as assignee, Doe 1, Doe 2, Maldonado, the Maloneys, Colligan, and Sullivan. Thus, the number of proposed class members exceeds the 100 members necessary to satisfy the numerosity requirement for purposes of CAFA jurisdiction.

### iv. Applicable Law

68. Under CAFA, "the term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure

authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).

69.    The analogous state law need not be pled in the complaint to satisfy CAFA.  That is because, if courts "interpreted 'any civil action filed under Rule 23' or a state-law analogue to refer only to cases that specifically mention Rule 23 or a state-law analogue," then "a plaintiff could avoid federal jurisdiction for a lawsuit that resembles a class action in all respects simply by omitting from the complaint the name of the rule or statute under which she proceeds." *Williams v. Employers Mutual Casualty Co., et al.*, 845 F.3d 891, 901 (8th Cir. 2017). "[A]llowing class-action plaintiffs to avoid federal jurisdiction simply by omitting explicit reference to the class-action rule they intend to proceed under would promote the kind of procedural gaming CAFA was enacted to prevent."  *Id.*; *see also Badeaux v. Goodell*, 358 F. Supp. 3d 562, 567 (E.D. La. 2019) ("A lawsuit resembling a class action will not escape CAFA jurisdiction simply because it omits the words 'class action' or does not include the state rule or statute under which it proceeds as a class action.").

70.    "If a complaint does not satisfy CAFA's jurisdictional requirements on its face, [courts] must cut through any pleading artifice to identify whether the case is ***in substance*** an interstate class action."  *Erie Insurance Exchange v. Erie Indemnity Co.*, 68 F.4th 815, 819 (3d Cir. 2023) (emphasis added).  The U.S. Supreme Court has warned "that courts must be careful not to 'exalt form over substance' when determining whether a case satisfies CAFA's jurisdictional requirements.'"  *Id.* at 819-20 (quoting *Standard Fire*, 568 U.S. at 595).

71.    Here, Plaintiffs' lawsuit is "in substance a class action, . . . notwithstanding [Plaintiffs'] artificial attempt to disguise the true nature of the suit."  *Addison Automatics, Inc. v. Hartford Cas. Ins. Co.*, 731 F.3d 740, 742 (7th Cir. 2013) (denying remand under CAFA where

plaintiff, an assignee of class rights, unsuccessfully attempted to omit reference to Rule 23 in the pleadings to avoid federal jurisdiction).

72.    The Complaint alleges that Atlas is an assignee of 18,564 Assignors.  *See, e.g.*, Compl., ¶ 25.  Under Daniel's Law, a "covered person's assignee . . . may bring a civil action in the Superior Court."  N.J.S.A. § 56:8-166.1(b).[2]  An "[a]ssignee" under Daniel's Law "means a person or entity to whom or which an authorized person has assigned, in writing, a covered person's right to bring a civil action for a violation of subsection a. of this section."  N.J.S.A. § 56:8-166.1(d).

73.    Plaintiffs' decision not to cite a Rule 23 analogue in the Complaint cannot "disguise the true nature of the suit."  *Addison Automatics*, 731 F.3d at 742.

74.    Atlas can bring this suit only in its capacity as the assignee for the claims of the 18,564 Assignors.  *See* N.J.S.A. §§ 56:8-166.1(b), (d).  In that capacity, Atlas purports to bring claims on behalf of 18,564 individuals, *see supra* ¶ 22; alleges commonality among all of these numerous claims (*see* Compl., ¶¶ 44-56 ("Facts Common to All Counts")); and purports to present this case as one in which joinder of more than 18,000 individual claimants is not impracticable or impossible.[3]  In this regard, Plaintiffs do not cite any joinder rule, and the Complaint does not demonstrate how Plaintiffs could join 18,571 claims in a single suit, absent the class-action mechanism.

75.    Courts have held that a state-law analogue statute or rule is, in effect, a class-action mechanism, where the statute or rule "resembles" an analogue of Rule 23.  *See Pac. Coast*

---

[2] Courts have held that "starting a legal proceeding in one court does not mean that the party has a right to permanently keep that proceeding in that chosen court."  *Aspen Am. Ins. Co. v. Blackbaud, Inc.*, 624 F.Supp.3d 982, 992 (N.D. Ind. 2022).  Thus, even if Atlas can "bring" an action in Superior Court, N.J.S.A. § 56:8-166.1(b), it "does not necessarily have a right to keep the suit in that court."  *Aspen*, 624 F. Supp. 3d at 992.  Indeed, that fact is inherent in the very concept of removal jurisdiction.

[3] Defendants do not concede that Plaintiffs have established any element of class certification.

*Fed'n of Fishermen's Associations, Inc. v. Chevron Corp.*, No. 18-CV-07477, 2023 WL 7299195, at *1–3 (N.D. Cal. Nov. 1, 2023) ("The complaint thus pleads a representative action authorized by section 382 of the California Code of Civil Procedure[,]" which "allows a plaintiff to sue and seek relief on behalf of absent parties[,]" and thus "resembles a damages class action under Rule 23 of the Federal Rules of Civil Procedure.").

76.    Thus, all of the requirements for CAFA jurisdiction over a class action have been met.

**B**.    **Mass Action Requirements Under CAFA**

77.    Removal is proper not only because this case is a class action under CAFA, but also because, in the alternative or in addition, this case is a "mass action" under CAFA.

78.    "Congress created the mass action in 2005, when it passed the Class Action Fairness Act (CAFA), a mostly jurisdictional statute." *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 318 (3d Cir. 2022). "CAFA's drafters feared that large-scale state litigation—deemed mass actions and brought under non-class joinder and consolidation rules—would evade CAFA's removal provisions simply because [such] litigation was not pursued under class action rules. . . . So Congress included mass-action provisions in CAFA." *Ibid.* (citations and quotation marks omitted).

79.    CAFA defines a "mass action" in relevant part as

> any civil action . . . in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under [28 U.S.C. § 1332(a)].

28 U.S.C. § 1332(d)(11)(B)(i). In short, "mass actions are deemed to be class actions removable under 28 U.S.C. § 1332(d)(2)–(10) if they otherwise meet the provisions of those paragraphs." *OptumRX*, 43 F.4th at 319 (citing 28 U.S.C. § 1332(d)(11)(A)).

80.     "In extending CAFA to large individual state court cases that are functionally indistinguishable from class actions, the mass action provision prevents plaintiffs' counsel from avoiding CAFA's expanded federal jurisdiction by simply choosing not to seek class certification." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1198 n.32 (11th Cir. 2007) (quoting S. Rep. No. 109–14, at 47 (2005), *reprinted in* 2005 U.S.C.C.A.N. 3, 44 (noting that "mass actions are simply class actions in disguise")).

81.     Federal jurisdiction therefore exists under CAFA over a mass action that satisfies (1) the class-action requirements of (a) minimal diversity and (b) the $5,000,000 *aggregate* amount in controversy; (2) numerosity for a mass action; and (3) the $75,000 *individual* amount-in-controversy requirement.

### i. Class Action Requirements

82.     "[U]nder § 1332(d)(11), a mass action 'will be treated as a class action for jurisdictional purposes. Thus, if such a civil action met the other diversity jurisdictional prerequisites set forth for class actions in [CAFA], that civil action would be subject to federal jurisdiction.'" *OptumRX*, 43 F.4th at 324 (quoting S. Rep. No. 109-14 at 46 (2005)).

83.     As explained above, there is minimal diversity between the parties, *see supra* ¶¶ 41-45, and the aggregate amount-in-controversy exceeds $5,000,000, *see supra* ¶¶ 46-48.  Here, the class-action requirements for mass actions under CAFA are satisfied.

### ii. Mass Action Numerosity

84.     Under CAFA, "the term 'mass action' means any civil action . . . in which **monetary relief claims of 100 or more persons** are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact . . . ."  28 U.S.C. § 1332(d)(11)(B)(i) (emphasis added).

85.    "The question is not whether 100 or more plaintiffs answer a roll call in court, but whether the '***claims***' advanced by 100 or more persons are proposed to be tried jointly." *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) (emphasis added). "Where a single complaint joins more than ***100 separate claims*** involving common questions of law and fact, there is a presumption that those plaintiffs have implicitly proposed a joint trial." *Ramirez v. Vintage Pharms., LLC*, 852 F.3d 324, 329 (3d Cir. 2017) (emphasis added).

86.    Here, Atlas alleges that it is the assignee for "monetary relief claims of 100 or more persons," 28 U.S.C. § 1332(d)(11)(B)(i)—specifically, the "monetary relief claims" of 18,564 Assignors. *See* Compl., ¶¶ 51-55. In addition, Doe 1, Doe 2, Maldonado, the Maloneys, Colligan, and Sullivan also each allege "monetary relief claims" and thus add seven additional such claims to the mass-action numerosity calculus.

87.    In the Third Circuit,

> [i]t is blackletter law that "the assignee steps into the shoes of the assignor." 29 Williston on Contracts § 74:56 (4th ed. 1999) ("Simply stated, the assignee steps into this pair of the assignor's shoes absolutely, and, if the shoes are dirty, then that dirt sullies the assignee no less than it did the assignor."). As a result, "[a]n assignee's right against the obligor is subject to all . . . defenses thereto . . . ." Restatement (First) of Contracts § 167(1) (1932). These defenses include not only defenses to the merits of the claim, but defenses based on where and how the claims may be prosecuted.

*Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, C.A. No. 15-6480, 2020 WL 5211035, at *11 (E.D. Pa. Sept. 1, 2020).

88.    Accordingly, "the Third Circuit found that partial assignees can be counted as class members when evaluating whether a class meets Rule 23's numerosity requirement." *Id.* at *10 (citing *In re Modafinil Antitrust Litigation*, 837 F.3d 238, 251-52 (3d Cir. 2016)); *In re Modafinil*, 837 F.3d at 251, *as amended* (3d Cir. Sept. 29, 2016) ("[P]artial assignees are appropriately considered to be members of a class."); *see also id.* at 252 ("*Fine Paper Litigation*

[, 632 F.2d 1081, 1089 (3d Cir. 1980),] envisioned the class action mechanism as a proper tool for partial assignees to participate in the lawsuit[.]").

89.    This case does not involve one plaintiff suing on behalf of a group of unnamed individuals. *See, e.g., Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161 (2014) (involving *parens patriae* action brought by state attorney general on behalf of state's citizens); *Erie Insurance Exchange v. Erie Indemnity Co.*, 68 F.4th 815 (3d Cir. 2023) (involving unincorporated association bringing suit "to benefit all members of" association).

90.    Rather, Atlas brings each claim for relief on behalf of 18,564 separate, allegedly identified Assignors, along with seven additional individuals. *See* Compl., ¶ 51. More precisely, Atlas has standing to sue (if at all) only in its alleged capacity as the assignee for each individual Assignor. Because Atlas "steps into the shoes of" each Assignor in this suit (29 Williston on Contracts § 74:56), Atlas's "right against" any Defendant is "subject to all defenses" that any Defendant may have had against any Assignor, including "defenses based on *where* and *how* the claims may be prosecuted." *Winn-Dixie Stores*, 2020 WL 5211035, at *11 (citing Restatement (First) of Contracts § 167(1) (1932)) (ellipses omitted; emphasis added).

91.    Atlas's strategic decision to not name the 18,564 Assignors in the case caption does not change the fact that Atlas is not suing on its individual behalf, but is entitled to bring each claim alleged in the Complaint only as the assignee for a corresponding and specific Assignor.

92.    Here, the mass-action numerosity element is satisfied, as Atlas is suing to recover on the "monetary relief claims of 100 or more persons" in a single lawsuit. 28 U.S.C. § 1332(d)(11)(B)(i).

### iii. Individual Amount in Controversy

93.    CAFA states that "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a) [of more than $75,000].'" *Haley v. AMS Servicing, LLC*, No. 13-5645 (FSH) (JBC), 2014 WL 2602044, at *4 (D.N.J. June 11, 2014) (quoting 28 U.S.C. § 1332(d)(11)(B)(i)).

94.    An assignee's claims may be aggregated to satisfy the jurisdictional amount in controversy requirement. *Deajess Medical Imaging, P.C. v. Allstate Ins. Co.*, 344 F.Supp.2d 907, 909-10 (S.D.N.Y. 2004). Moreover, the same violations of Daniel's Law alleged by Atlas as assignee are also alleged by Doe 1, Doe 2, Maldonado, the Maloneys, Colligan, and Sullivan. *See, e.g.,* Compl., ¶¶ 28, 53-54. As to each of the Defendants, the Complaint seeks to recover for 18,571 alleged statutory violations valued at $1,000 each, totaling $18,571,000 in potential "actual" damages, clearly exceeding the $75,000 aggregate amount-in-controversy threshold.

95.    Moreover, as an alternate means of satisfying the amount-in-controversy requirement, courts have held that there is federal jurisdiction over a mass action under CAFA where "Defendants have shown that ***at least one*** individual has a claim where the amount in controversy is greater than $75,000." *Haley*, 2014 WL 2602044, at *5 (emphasis added) ("Defendants have also shown that some number of individual Plaintiffs place greater than $75,000 at issue. Thus, there is CAFA jurisdiction over this action; Plaintiffs' motion to remand the action is denied.").

96.    Here, ***each*** alleged claim appears to exceed $75,000. As discussed above, the Complaint alleges that each of the 18,564 Assignors' rights were violated by each of the 22 Defendants under Daniel's Law. Thus, at a minimum, the Complaint alleges that each

Assignor's claim warrants recovery of up to $1,000 in "actual" damages as to each of the 22 Defendants (*i.e.*, $22,000 in statutory damages per Assignor).

97.     Also as explained above, claims for "punitive damages are capped at 'five times the liability of that defendant for compensatory damages or $350,000, whichever is greater.'" *Harco*, 2020 WL 3287129, at *2 (quoting N.J. Stat. Ann. § 2A:15–5.14). "For purposes of the amount in controversy calculation, courts assume this maximum 'five times' multiplier." *Id.* (citing *Frederico*, 507 F.3d at 199).

98.     Thus, for each claim by each Assignor against each Defendant, the Complaint seeks $1,000 in compensatory damages plus $5,000 in punitive damages. Thus, each Assignor's claim is valued at $132,000 ($6,000 x 22 Defendants) for statutory damages and punitive damages alone. Moreover, as explained above, the Complaint seeks attorneys' fees and injunctive relief, which further increase the individual amount in controversy for each alleged claim. *See supra* ¶¶ 59-62.

## C.     <u>None of the CAFA Exceptions Apply</u>

99.     CAFA provides for certain mandatory and discretionary exceptions to the conferral of federal jurisdiction over class actions. *See* 28 U.S.C. § 1332(d)(3)-(4). None of these exceptions applies here. Each CAFA exception requires, as a starting point, an in-state defendant. *See* 28 U.S.C. § 1332(d)(3) (requiring that "the primary defendants" be citizens of the forum state); 28 U.S.C. § 1332(d)(4) (requiring that "significant relief" be sought from at least one defendant who is a citizen of the forum state).

100.    Here, as shown above, neither TelTech nor Epic is a citizen of New Jersey, and the citizenship of the unidentified Defendants is disregarded, so none of the CAFA exclusions apply.

101.    Further, none of the exceptions for federal jurisdiction over a "mass action" apply here.  *See* 28 U.S.C. § 1332(d)(11)(B)(ii)(I-IV).  Specifically, none of the claims herein were joined upon motion of a defendant (subsection II); the claims are not asserted on behalf of the general public (subsection III); and the claims have not been consolidated or coordinated solely for pretrial proceedings (subsection IV).

102.    In addition, all of the claims in this action do not arise from a single "event or occurrence" in New Jersey that allegedly resulted in injuries in New Jersey or in states contiguous to New Jersey (subsection I).  Rather, first, the Complaint alleges that "***each*** of the Individual Plaintiffs and ***all*** of the Covered Persons [*i.e.*, the Assignors] . . . sent Defendants written nondisclosure requests (via email)"  (Compl., ¶ 51 (emphasis added)), amounting to 18,571 separate alleged events or occurrences.  Second, neither TelTech nor Epic received any alleged "notification" in New Jersey (as TelTech and Epic are not citizens of New Jersey), and thus no "event or occurrence" on which a claim is based took place in New Jersey.  Third, because the Assignors include individuals who "had ***previously*** resided or worked in New Jersey" (Compl., ¶ 26 (emphasis added)) not all of the alleged notifications were sent *from* New Jersey.  Thus, this exception does not apply either.

103.    None of the class or mass action exceptions to CAFA jurisdiction apply here.

**D.    <u>All Other Removal Requirements Have Been Met</u>**.

104.    This Court is part of the district and division within which this action was filed. *See* 28 U.S.C. § 1446(a).

105.    The remaining Defendants, other than TelTech and Epic, need not consent to removal for removal to be proper.  *See Brown v. Jevic*, 575 F.3d 322, 327 (3d Cir. 2009)

("[U]nder CAFA, . . . Congress provided that a single defendant may remove an action without the consent of other defendants. *See* 28 U.S.C. § 1453(b).").

106.    Promptly after filing this Notice of Removal, Defendants shall cause a true and correct copy of the same to be filed with the Clerk of the Court for the Superior Court of New Jersey, Middlesex County, where the case was filed, pursuant to 28 U.S.C. § 1446(d), as well as a Notice of Filing of Notice of Removal, a copy of which is attached hereto as **Exhibit D**.


WHEREFORE, Defendants TelTech and Epic respectfully submit this notice that the State Court Action is removed from the Superior Court of New Jersey, Middlesex County, to the United States District Court for the District of New Jersey.

Dated:  Florham Park, New Jersey
        March 26, 2024

CARLTON FIELDS, P.A.

By:     */s/ Michael D. Margulies*
        Michael D. Margulies
        Julia E. Duffy
180 Park Avenue, Suite 106
Florham Park, New Jersey 07932
(973) 828-2600
mmargulies@carltonfields.com
jduffy@carltonfields.com

*Attorneys for Defendants TelTech Systems, Inc.*
*and Epic Applications, LLC*

**CARLTON FIELDS, P.A.**
Michael D. Margulies
Julia E. Duffy
180 Park Avenue, Suite 106
Florham Park, New Jersey 07932
Tel.: (973) 828-2600
mmargulies@carltonfields.com
jduffy@carltonffields.com
*Attorneys for TelTech Systems, Inc.*
*and Epic Applications, LLC, i/p/a Epic Enterprises, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, *as assignee of individuals who are Covered Persons*, JANE DOE-1, *a law enforcement officer*, JANE DOE-2, *a law enforcement officer*, EDWIN MALDONADO, SCOTT MALONEY, JUSTYNA MALONEY, PATRICK COLLIGAN, and WILLIAM SULLIVAN,<br><br>                   Plaintiffs,<br><br>        -against-<br><br>TELTECH SYSTEMS, INC., EPIC ENTERPRISES, LLC, RICHARD ROES 1-10, *fictitious names of unknown individuals* and ABC COMPANIES 1-10, *fictitious names of unknown entities*,<br><br>                   Defendants. | Civil Action No. _____<br><br>**LOCAL RULE 11.2 CERTIFICATION** |

I, Michael D. Margulies, hereby certify that the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding other than the state court action, which is the subject of this Notice of Removal, pending in Superior Court of New Jersey, Middlesex County, styled *Atlas Data Privacy Corporation, as assignee of individuals who are Covered Persons, Jane Doe-1, a law enforcement officer, Jane*

*Doe-2, a law enforcement officer, Edwin Maldonado, Scott Maloney, Justyna Maloney, Patrick Colligan, and William Sullivan v. Teltech Systems, Inc., Epic Enterprises, LCC, Richard Roes 1-10, fictitious names of unknown individuals and ABC Companies 1-10, fictitious names of unknown entities*, Docket No. MID-L-859-24.

Dated:  March 26, 2024

_/s/ Michael D. Margulies_____
Michael D. Margulies